UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CAJUN CONTI, LLC,

                Plaintiff,

-v.-

STARR SURPLUS LINES INSURANCE COMPANY,

                Defendant.

23 Civ. 8844 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

    This case arises out of an insurance coverage dispute between Plaintiff Cajun Conti, LLC ("Plaintiff" or "Cajun Conti") and Defendant Starr Surplus Lines Insurance Company ("Defendant" or "Starr"), in which Plaintiff alleges that Defendant failed to cover losses caused by Hurricane Ida in 2021. At the center of this dispute is a question over which state's law applies, and before the Court now are the parties' cross-motions for partial summary judgment on that question. Plaintiff urges the Court to apply Louisiana law, while Defendant asserts that New York law governs this action. For the reasons set forth below, the Court concludes that New York law governs the action; accordingly, it grants Defendant's motion for partial summary judgment and denies Plaintiff's motion for partial summary judgment.

## BACKGROUND[1]

### A.  Factual Background

Cajun Conti is a limited liability company organized in 2008 under the laws of Louisiana, whose members and agents are domiciled in Louisiana.  (Pl. 56.1 ¶ 1).  Its principal place of business is also in Louisiana.  (*Id.*).  Starr is a surplus lines insurer organized under the laws of, and domiciled in, Texas,

---

[1]  The facts set forth in this section of the Opinion are drawn from the parties' submissions in connection with their cross-motions for partial summary judgment.  The Court primarily sources facts from Plaintiff's Local Civil Rule 56.1 Statement of Material Undisputed Facts ("Pl. 56.1" (Dkt. #70-2)), Defendant's Responses and Counterstatement in Opposition to Plaintiff's Local Rule 56.1 Statement of Material Facts ("Def. 56.1" (Dkt. #75)), Plaintiff's Response to Defendant's Local Civil Rule 56.1 Statement ("Pl. 56.1 Reply" (Dkt. #81)), and Defendant's Reply in Response to Plaintiff's Counterstatement of Facts ("Def. 56.1 Reply" (Dkt. #83)).

Citations to a party's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein.  Where a fact stated in a movant's Rule 56.1 Statement is supported by evidence and controverted only by a conclusory statement by the opposing party, the Court finds that fact to be true.  *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be submitted by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").  Where one party agrees fully with a fact set forth in the other's Rule 56.1 Statement, the Court cites only to the Rule 56.1 Statement of the party originally stating the fact.

The Court sources additional facts from the declaration of Morton Bader ("Bader Decl." (Dkt. #70-3)); the declaration of Jennifer Sadalski and the exhibits attached thereto ("Sadalski Decl., Ex. [ ]" (Dkt. #72)); and the declaration of Lonnie Walker and the exhibits attached thereto ("Walker Decl., Ex. [ ]" (Dkt. #73)).

For ease of reference, the Court refers to Plaintiff's memorandum of law in support of its motion for partial summary judgment as "Pl. Br." (Dkt. #70-1); to Defendant's memorandum of law in opposition to Plaintiff's motion and in support of its cross-motion for partial summary judgment as "Def. Opp." (Dkt. #74); to Plaintiff's memorandum of law in further support of its motion and in opposition to Defendant's cross-motion as "Pl. Reply" (Dkt. #80); and to Defendant's memorandum of law in further support of tis cross-motion as "Def. Reply" (Dkt. #82).  The Court also refers to Plaintiff's supplemental brief in support of its motion for partial summary judgment as "Pl. Supp." (Dkt. #90) and to Defendant's supplemental brief in support of its motion for partial summary judgment as "Def. Supp." (Dkt. #91).

with headquarters in New York.  (*Id.* ¶ 2).  Starr is authorized to do business in Louisiana.  (*Id.*).

Starr issued an insurance policy to Cajun Conti covering the period from June 30, 2021, to June 30, 2022 (the "Policy").  (Def. 56.1 ¶ 1).  The Policy provided renewal property insurance and other coverage to Cajun Conti for two properties that are pertinent to this action: (i) 739 Conti Street in New Orleans, Louisiana (the "Restaurant") and (ii) 1400 East Judge Perez Drive in Chalmette, Louisiana (the "Warehouse").  (Pl. 56.1 ¶ 4).  The Policy had a $15,350,000 limit of liability per occurrence subject to various deductibles, including a 3% deductible per occurrence for a named windstorm.  (Def. 56.1 ¶ 2).

Cajun Conti listed a total insurable value of $7,025,000 for the Restaurant, as well as combined values of $400,000 for the Warehouse.  (Def. 56.1 ¶ 13).  By July 21, 2021, after adding more locations to the Policy, Cajun Conti had increased the total insurable value for all locations under the Policy to $16,800,000.  (*Id.* ¶ 14).  Because Starr agreed to add certain locations and values to the Policy, including the Warehouse, for additional premiums totaling $18,224.50, the combined total annual premium for the Policy was ultimately $127,009.50.  (*Id.* ¶ 15).

The Policy contains a choice-of-law and forum-selection clause, which states in relevant part:

> No suit, action, or proceeding regarding this POLICY for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this POLICY.... Any suit, action, or proceeding against the COMPANY must be brought solely and exclusively in New York

> state court or a federal court sitting within the State of New York.  The laws of the State of New York shall solely and exclusively be used and applied in any suit, action, or proceeding, without regarding to choice of law or conflict of law principles.

(Pl. 56.1 ¶ 21; *see also* Sadalski Decl., Ex. 1 at STARR_UW 000117).

According to Cajun Conti, the aforementioned premises suffered significant damage from Hurricane Ida on August 29, 2021.  (Pl. 56.1 ¶ 16).  That damage gave rise to the present suit, wherein Cajun Conti contends that Starr failed to pay the full policy benefits that are owed for covered losses and is liable to Cajun Conti for millions of dollars under the Policy.  (Def. 56.1 ¶ 19).

### B.     Procedural Background

Plaintiff filed this action initially in the United States District Court for the Eastern District of Louisiana on June 1, 2023.  (Dkt. #1).  On July 11, 2023, Defendant filed a motion to transfer this case pursuant to 28 U.S.C. § 1404(a), arguing that the Policy contained a mandatory forum-selection clause.  (Dkt. #18).  Plaintiff opposed this request (Dkt. #23), and filed an Amended Complaint on July 31, 2023 (Dkt. #24).  The District Court for the Eastern District of Louisiana proceeded to schedule an oral argument on Defendant's motion, which argument was held on October 5, 2023.  (Dkt. #31).  After oral argument, the court granted Defendant's motion to transfer.  (October 5, 2023 Minute Entry).  In accordance with Judge Wendy B. Vitter's decision, this case was then transferred to the Southern District of New York.  (Dkt. #40).

Following the transfer of this case, the parties entered a civil case management plan and scheduling order, which the Court endorsed on February 16, 2024. (Dkt. #48). On March 15, 2024, Plaintiff filed a letter motion requesting leave to amend the Amended Complaint, a request that Defendant opposed. (Dkt. #56, 58). Shortly thereafter, Plaintiff filed another letter, requesting a pre-motion conference on its anticipated motion for partial summary judgment. (Dkt. #61). Defendant opposed this request as well. (Dkt. #62). On March 27, 2024, Plaintiff filed a reply in further support of its pre-motion letter and the same day, the Court set a date for a pre-motion conference. (Dkt. #64). At the pre-motion conference held on April 9, 2024, the Court set a briefing schedule for the parties' cross-motions for partial summary judgment, which schedule included an opportunity for Plaintiff to amend its complaint. (April 9, 2024 Minute Entry). The Court also stayed discovery, pending the outcome of the motions for partial summary judgment. (*Id.*).

In accordance with the Court's schedule, Plaintiff filed its Second Amended Complaint, the operative pleading in this matter, on April 29, 2024. (Dkt. #67). Plaintiff then filed its motion for partial summary judgment on May 31, 2024. (Dkt. #70). Defendant filed its cross-motion for partial summary judgment on June 28, 2024. (Dkt. #71). On July 26, 2024, Plaintiff filed its reply in further support of its motion for partial summary judgment and its opposition to Defendant's motion. (Dkt. #80). Defendant filed its reply on August 9, 2024. (Dkt. #82). Finally, the parties provided supplemental

5

briefing on their motions in December 2024, in light of recent decisions in this Circuit that bore on issues relevant to this case. (Dkt. #90, 91).

## DISCUSSION

### A. Applicable Law

#### 1. Summary Judgment

To succeed on a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), a litigant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Fed. R. Civ. P. 56(a); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno* v. *Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P.* v. *Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). Further, a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).

"It is the movant's burden to show that no genuine factual dispute exists" and a court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Vt. Teddy Bear Co., Inc.* v. *1-800*

---

[2] The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact. *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination."). This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

*Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  If the movant has met its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" and, toward that end, "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations, quotation marks, and emphasis omitted).  The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

### 2. Choice-of-Law Rules

A federal court sitting in New York applies New York's choice-of-law rules.  *See Klaxon Co.* v. *Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012) ("When a federal district court sits in diversity, it generally applies the law of the state in which it sits, including that state's choice of law rules.").  This rule applies in cases such as this one, where the action is transferred from a court in one state to a court in another pursuant to a valid forum-selection clause.  *See Atl. Marine Const. Co., Inc.* v. *U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 64-66 (2013).  Moreover, courts routinely address choice-of-law issues on summary judgment.  *See, e.g.*, *La. Revitalization Fund LLC* v. *Starr Surplus Lines Ins. Co.*, No. 23 Civ. 1006 (VSB) (VF), 2024 WL 1337617, at *2 (S.D.N.Y. Mar. 27, 2024) (citing *Susana* v. *NY Waterway*, 662 F. Supp. 3d 477, 487 (S.D.N.Y. 2023)).

**B.     Analysis**

The central issue posed by the parties' cross-motions is whether Louisiana law (as Plaintiff asserts) or New York law (as Defendant asserts) governs the claims in this case. The Court holds that, under New York choice-of-law rules, the Policy's choice-of-law clause is valid, and therefore New York law governs this action.

**1.     New York Law Governs This Dispute**

Because this Court sits in New York, it must apply New York choice-of-law rules. *See Klaxon Co.*, 313 U.S. at 496. As Cajun Conti points out, under New York law, choice-of-law disputes are often resolved using a conflict-of-laws analysis, whereby the court conducts a "center of gravity" or "grouping of contacts" analysis to determine which state has the most significant relationship to the transaction and the parties. (Pl. Br. 20 (citing *In re Allstate Ins. Co. (Stolarz)*, 91 N.Y.2d 219, 226 (1993))). However, such an analysis is not required here for two independent reasons, both of which relate to the Policy's choice-of-law provision.

*First*, Section 5-1401 of New York's General Obligations Law provides that the parties to any contract involving a transaction of at least $250,000 "may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state." N.Y. Gen. Oblig. Law § 5-1401. The New York Court of Appeals has found that this provision obviates the need for a conflict-of-laws analysis. *See IRB-Brasil Resseguros, S.A. v. Inepar Inv., S.A.*,

8

20 N.Y.3d 310, 316 (2012) ("To find here that courts must engage in a conflict-of-laws analysis despite the parties' plainly expressed desire to apply New York law would frustrate the Legislature's purpose of encouraging a predictable contractual choice of New York commercial law and, crucially, of eliminating uncertainty regarding the governing law."); *see also Indian Harbor Ins. Co.* v. *City of San Diego*, 972 F. Supp. 2d 634, 651 (S.D.N.Y. 2013) ("[I]t is plain that, under Section 5-1401, New York law calls for enforcing the parties' New York choice-of-law provision and applying New York law to the parties' dispute under the policy."), *aff'd*, 586 F. App'x 726 (2d Cir. 2014) (summary order).

In an effort to circumvent this statute, Cajun Conti argues that the Policy does not involve "at least $250,000" because the original premium paid for the policy was $108,785. (Pl. Br. 19). However, under the plain language of Section 5-1401, the statute applies to "any contract, agreement or undertaking, contingent or otherwise, in consideration of, or *relating to any obligation arising out of a transaction* in the aggregate not less than two hundred fifty thousand dollars." N.Y. Gen. Oblig. Law § 5-1401 (emphasis added). Accordingly, because the Policy has a limit of liability of approximately $15,350,000 per occurrence, it falls within Section 5-1401's purview and the Court must adhere to the choice-of-law provision. *See La. Revitalization Fund LLC*, 2024 WL 1337617, at *4 ("Here the Properties covered by the Policy are valued in total at $22,037,833.... The Policy also has a limit of liability of approximately $22 million per occurrence.... As such, the Policy is a commercial contract involving $250,000 or more as required for application of General Obligation[s]

Law, § 5-1401."); *AMVS, Inc.* v. *Mt. Hawley Ins. Co.*, No. 22 Civ. 10782 (ER), 2025 WL 278438, at *3 (S.D.N.Y. Jan. 23, 2025) ("Section 5-1401 applies to the Policy at issue here, which has a per occurrence loss limit of $3,880,000."); *U.S. Rubber Corp.* v. *Mt. Hawley Ins. Co.*, No. 23 Civ. 7618 (AT), 2024 WL 5268848, at *2 (S.D.N.Y. Dec. 31, 2024) ("Section 5-1401 applies to the Policy, which indisputably provides for insurance limits exceeding $250,000.").

*Second*, regardless of whether Section 5-1401 applies, New York Court of Appeals precedent requires the application of New York substantive law. In *Ministers & Missionaries Benefits Board* v. *Snow*, the Court of Appeals found that "New York courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract, even if the contract is one that does not fall within General Obligations Law § 5-1401." 26 N.Y.3d 466, 474 (2015). Doing so "would contravene the primary purpose of including a choice-of-law provision in the contract — namely, to avoid a conflict-of-laws analysis" — and would "interfere with, and ignore, the parties' intent, contrary to the basic tenets of contract interpretation." *Id.* at 475; *see also Mindspirit, LLC* v. *Evalueserve Ltd.*, 346 F. Supp. 3d 552, 583 (S.D.N.Y. 2018) ("The language of *Ministers* is unequivocal and brooks no exceptions[.]").

The Court of Appeals reiterated this principle in *Petróleos de Venezuela S.A.* v. *MUFG Union Bank, N.A.*, a case that originated in and is currently pending before this Court. *See* No. 19 Civ. 10023 (KPF). *Petróleos* reached the Court of Appeals after the Second Circuit determined that the case raised several novel issues of state law and certified three questions to the Court of

10

Appeals. 51 F.4th 456, 474-75 (2d Cir. 2022).[3] After accepting certification, the Court of Appeals "reaffirm[ed] the principle of ... *Ministers* that when the parties have chosen New York law, a court may not contravene that choice through common-law conflicts analysis." 41 N.Y.3d 462, 476 (2024). Under this line of cases, the Court is obligated to enforce the Policy's choice-of-law clause and apply New York law, without consideration of a conflict-of-laws analysis.

### 2. The Louisiana Insurance Code Does Not Mandate a Different Result

Undaunted, Cajun Conti maintains that despite New York law, the Policy's choice-of-law provision is void and unenforceable because it violates the Louisiana Insurance Code. (*See, e.g.*, Pl. Br. 1-2). The particular provision of the Louisiana Revised Statutes cited by Cajun Conti states, in relevant part: "No insurance contact delivered or issued for delivery in [Louisiana] and

---

[3]   The three questions certified by the Second Circuit were:

> 1. Given PDVSA's argument that the Governing Documents are invalid and unenforceable for lack of approval by the National Assembly, does New York Uniform Commercial Code section 8-110(a)(1) require that the validity of the Governing Documents be determined under the Law of Venezuela, "the local law of the issuer's jurisdiction"?
>
> 2. Does any principle of New York common law require that a New York court apply Venezuelan substantive law rather than New York substantive law in determining the validity of the Governing Documents?
>
> 3. Are the Governing Documents valid under New York law, notwithstanding the PDV Entities' arguments regarding Venezuelan law?

*Petroleos de Venezuela S.A.* v. *MUFG Union Bank, N.A.*, 51 F.4th 456, 475-76 (2d Cir.), *certified question accepted sub nom. Petróleos de Venezuela S.A.* v. *MUFG Union Bank, N.A.*, 39 N.Y.3d 960 (2022), *and certified question answered sub nom. Petróleos de Venezuela S.A.* v. *MUFG Union Bank, N.A.*, 41 N.Y.3d 462 (2024).

covering subjects located, resident, or to be performed in [Louisiana] ... shall contain any condition, stipulation, or agreement ... [r]equiring to be construed according to the law of any other state or country[.]" La. R.S. 22:868(A)(1). It further provides that "[a]ny such condition, stipulation, or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of any of the other provisions of the contract." *Id.* 22:868(C). Under Cajun Conti's theory, La. R.S. 22:868 voided the Policy's selection of New York law from the moment the contract was formed, because the Policy was delivered and issued in Louisiana. (*See* Pl. Br. 11 (explaining that the insurance policy was delivered and issued in Louisiana), 15 (arguing that choice-of-law clause was void *ab initio* because it violated Louisiana public policy)).

The Court disagrees. As just noted, Cajun Conti reasons that under the Louisiana Insurance Code, the Policy's choice-of-law provision was void *ab initio*, and thus unable to be enforced by this Court. (Pl. Br. 2-3). This same argument was raised, unsuccessfully, by the plaintiffs in *My Investments LLC* v. *Starr Surplus Lines Insurance Co.*, another case in this District that involved a choice-of-law dispute over whether New York or Louisiana law applied to an insurance contract. No. 23 Civ. 4229 (VEC), 2024 WL 4859027, at *3 (S.D.N.Y. Nov. 20, 2024). In a persuasive analysis, Judge Caproni rejected the plaintiffs' arguments that Louisiana law governed the formation of the contract, and instead held that the plaintiffs' "attempt to draw [a distinction] between interpretation at the contract formation stage, on one hand, and interpretation

12

at the point of a lawsuit, on the other, f[ound] no support in law." *Id.* Put simply, "[b]ecause New York choice-of-law principles apply, and because 'the courts of New York ... refuse[] to consider the public policy of foreign states ... to overturn an otherwise valid contractual choice of law provision,' § 22:868(C) of the Louisiana Insurance Code is irrelevant; the Policy's choice-of-law clause was not void *ab initio*." *Id.* (quoting *Capstone Logistics Holdings, Inc.* v. *Navarrete*, No. 17 Civ. 4819 (GBD), 2018 WL 6786338, at *22 (S.D.N.Y. Oct. 25, 2018), *aff'd in part and remanded in part on other grounds*, 796 F. App'x 55 (2d Cir. 2020) (summary order)). *See also Ram Krishana, Inc.* v. *Mt. Hawley Ins. Co.*, No. 22 Civ. 3803 (JLR), 2024 WL 1657763, at *4 (S.D.N.Y. Apr. 17, 2024) (finding that plaintiff's argument that choice-of-law provision was "void *ab initio*" was "without merit" because "Section 22:868 has no application here given that New York choice-of-law rules apply and *Minister* directs the application of New York substantive law as selected by the Policy"); *La. Revitalization Fund LLC*, 2024 WL 1337617, at *5-6 (finding New York choice-of-law provision to be enforceable despite its conflict with La. R.S. 22:868).  The Court agrees with this analysis.  Because New York law governs the entirety of the Policy, Section 868 has no application here.

In so concluding, the Court acknowledges recent cases from this District, cited by Cajun Conti, that have considered whether a public-policy exception to the *Minister* rule exists, whereby "courts enforce the parties' chosen law unless its application 'would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the

13

particular issue.'" *700 Camp Street LLC* v. *Mt. Hawley Ins. Co.*, No. 24 Civ. 3060 (AS), 2024 WL 4300113, at *2 (S.D.N.Y. Sept. 26, 2024) (quoting RESTATEMENT (SECOND) OF CONFLICT OF L. § 187(2)(b)) (discussing, but not ultimately deciding, whether a public-policy exception may exist under New York law); *see also BDO USA, P.C.* v. *Rojas*, No. 24 Civ. 101 (CM), 2024 WL 3729581, at *9 (S.D.N.Y. Aug. 8, 2024) ("Unless and until New York's high court instructs our Court of Appeals otherwise, the *Restatement* exception to choice-of-law for cases with which the chosen state has no other contact remains intact and applicable."). This potential exception is rooted in Section 187(2) of the *Restatement (Second) of Conflict of Laws* and was relied upon by the Court of Appeals in cases pre-dating *Petróleos*. *See, e.g.*, *BDO USA, P.C.*, 2024 WL 3729581, at *2-3 (explaining the use of the *Restatement* approach under New York law).

      While the Court recognizes the ambiguity in the current law, it finds that conducting a choice-of-law analysis is still not appropriate here. To begin, it is worth noting that neither case cited by Cajun Conti considered the implications of N.Y. Gen. Obl. Law § 5-1401 in its analysis. The statute was not mentioned in *700 Camp Street, LLC* v. *Mt Hawley Ins. Co.*, where the court discussed these issues but ultimately did not reach a conclusion on the availability of a common-law public-policy exception. *See generally* 2024 WL 4003113. And in *BDO USA, P.C.* v. *Rojas*, the court stated that the holding of *Petróleos*, "which turn[ed] on interplay between General Obligations law § 5-1401 and the Uniform Commercial Code," had no implications for that case, which

14

"present[ed] no similar issue." 2024 WL 3729581, at *10. Because this Court has found that N.Y. Gen. Obl. Law § 5-1401 applies to the Policy, this finding alone is an independent basis for distinguishing these cases.

But more fundamentally, conducting such an analysis would violate the Court of Appeals' clear directive that courts should apply the law that the parties chose to govern their contract. This Court's conclusion accords with that reached by many other courts in this District, which have likewise found that a New York choice-of-law clause in an insurance policy must be enforced notwithstanding a statute in the insured's home state potentially voiding such clauses. *See, e.g.*, *AMVS*, 2025 WL 278438, at *3 (finding that the court was obligated to apply New York's choice-of-law regime, which mandated application of New York, rather than Texas, law to an insurance policy); *HKB Hosp. LLC* v. *Mt. Hawley Ins. Co.*, No. 23 Civ. 372 (JPO), 2024 WL 4349508, at *2 (S.D.N.Y. Sept. 30, 2024) (rejecting plaintiff's argument that choice-of-law provision violated the very sections of Texas Insurance Code that allow defendant to operate in Texas, reasoning that "it is the choice-of-law regime of New York, not Texas, that controls the validity of the Policy's choice-of-law clause"); *Ram Krishana*, 2024 WL 1657763, at *4 (finding that insurance policy's selection of New York substantive law must be enforced), *CBKZZ Inv. LLC* v. *Renaissance Re Syndicate 1458 Lloyds*, No. 22 Civ. 10672 (AS), 2024 WL 728890, at *2 (S.D.N.Y. Feb. 22, 2024) (finding that New York law controlled over Texas insurance law, "when the parties have selected New York law in their contract"); *Berkley Assurance Co.* v. *MacDonald-Miller Facility Sols., Inc.*,

No. 19 Civ. 7672 (JPO), 2019 WL 6841419, at *2-3 (S.D.N.Y. Dec. 16, 2019) (finding that New York law, rather than Washington law, controlled the validity of a policy's choice-of-law clause), *reconsideration denied*, 2020 WL 1643866 (S.D.N.Y. Apr. 1, 2020). Accordingly, the Court declines to consider Louisiana law or Plaintiff's proffered public-policy exception in the present case.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment is DENIED. Defendant's motion for partial summary judgment is GRANTED. The parties are ordered to meet and confer, and to provide the Court with a letter outlining proposed next steps in the case on or before **April 15, 2025.** The Clerk of Court is directed to terminate the pending motions at docket entries 70 and 71.

SO ORDERED.

Dated:    March 11, 2025
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge